IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| PATRICK WAYNE BARRETT, SR., ) | |
| Plantiff, ) | |
| vs. ) | Case No.: 16-cv-211-wmc |
| SENECA FOODS CORPORATION, ) | |
| Defendant. ) | |

**ANSWERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES, REQUESTS FOR ADMISSION AND REQUESTS FOR PRODUCTION OF DOCUMENTS**

TO: Sara L. Gehrig-Woodman
Nowlan & Mouat LLP
100 South Main Street
Janesville, WI 53545

## ANSWERS TO REQUESTS FOR ADMISSION

**REQUEST NO. 1:** Admit that you worked at Seneca Foods Corporation ("Seneca") from September 15, 2015 until November 15, 2015

**ANSWER:** Plantiff admits that he worked for Seneca from sometime in September 2015 to November 15th, 2015. However, plantiff is unsure of the exact date that he began employment at Seneca.

**REQUEST NO. 2:** Admit that Seneca did not terminate your employment.

**ANSWER:** Plantiff admits that Seneca did not terminate his employment.

**REQUEST NO. 3:** Admit that you failed to report for work at Seneca after November 15, 2015.

**ANSWER:** Plantiff admits that he did not report to work after November 15, 2015 because plantiff advised supervisor on the morning of November 15, 2015 that he quit his employment at Seneca due to ongoing harrasment, retaliation and

discrimination that continued from warehouse #4 to plantiff's new location in production.

**REQUEST NO. 4:** Admit that you were re-incarcerated and unable to continue work at Seneca following November 15, 2015.

**ANSWER:** Plantiff admits being re-incarcerated but denies this was reason that he was unable to continue work (as above) plantiff quit his employment and had no desire to return to a hostile work environment.

**REQUEST NO. 5:** Admit that on November 4, 2015, you were counseled by Seneca for committing a safety violation.

**ANSWER:** Plantiff denies ever being counseled for comitting any safety violations. Plantiff admits while backing up backing into a pole on November 4, 2015 as is common occurance for drivers, this is the reason plastic barriers are fastened and positioned around the poles. Plantiff again denies being counseled but asserts that supervisor, "group leader" Andy Terry, yelled at, humiliated, disrespected, and with menacing body language causing plantiff to feel as if verbal was rapidly approaching physical in regards to Mr. Terry's hostilities, plantiff decided that it was time to quit and approached human resources personel "Ellen Murphy" with intentions to do so.

**REQUEST NO. 6:** Admit that, following your safety violation on November 4, 2015, you informed one or more Seneca employees that you wished to quit.

**ANSWER:** Plantiff (as above) denies commiting safety violation, admits bumping into pole. Plantiff admits that he informed one or more Seneca employees that he wished to quit on November 4, 2015.

**REQUEST NO. 7:** Admit that you agreed, following your safety violation on November 4, 2015, to work in a different area of Seneca's Janesville facility at the same rate of pay you had received prior to November 4, 2015.

**ANSWER:** Plantiff (as above) denies that he commited a safety violation on November 4, 2015 or that he agreed to work in a different area (productions) at the same pay rate. Plantiff admits that through information by co-worker and fellow inmate at half-way house "Bufford" that there was a forklift position open in

production. Plantiff admits that he and co-worker, Bufford, apporached supervisor, Larry King, in break room and explained pantiff's situation in warehouse #4 regarding Andy Terry, plantiff further admits that he requested vacant forklift position as told to him by Bufford that was recently vacated by production forklift driver "Will", and was hired as replacement by supervisor Larry King.

**REQUEST NO. 8:** Admit that the safety violation about which you were counseled on November 4, 2015, involved your use or operation of a forklift.

**ANSWER:** Plantiff denies comitting safety violation (as above). Plantiff admits backing up bumping into pole.

**REQUEST NO. 9:** Admit that Seneca had no role in or responsibility for the fact that you were re-incarcerated on or about November 15, 2015, and unable to work at Seneca as of that date.

**ANSWER:** Plantiff denies that Seneca had no role or responsibility for the fact of his re-incarceration, further, plantiff contends that his treatment of discrimination and abuse, at the hands of Andy Terry, Steve Wallis and multiple other Seneca employees were the cause, in part, to plantiffs relapse of prior diagnosis of poly-substance abuse, anti-social personality disorder and chronic major depresive disorder causeing further damage to an already fragile and emotional frame of mind.

## PLANTIFF'S ANSWERS TO INTERROGATORIES

**INTERROGATORY NO. 1:** Identify all periods of incarcerations you have served since age 16. For each period of incarceration, state the facility at which you were incarcerated (by location and name of facility), the offense or offenses for which you were incarcerated, the dates of your incarceration, and the ability or lack of ability to leave the facility, during the term of your incarceration, for employment or employment-related activities.

**ANSWER:** I object to interrogatory #1 based on the fact that my ciminal history,

periods of incarceration and location of incarcerations has no revelance to this cival case for impeachment purposes or otherwise. Further, plantiff reminds defendant that he is the victim in this case as well as the person who filed federal civil rights violation complaint.

**INTERROGATORY NO. 2:** Identify all periods of time you spent in transitional (incarceration to community) housing since age 16, including but not limited to the half-way house located at Sunny Lane Road in Janesville, Wisconsin. For each period of time spent in transitional housing, identify the location of the transitional housing (by city and state) and the duration of time spent in such housing.

**ANSWER:** I object to interrogatory #2. See above answer as to reason to this objection.

**INTERROGATORY NO. 3:** Identify each items of physical evidence, including but not limited to ESI, photographs, audio tapes, text messages, or documents in your possession which you believe supports your claim that Seneca discriminated against you.

**ANSWER:** Plantiff currently has nothing listed above in his possession due to the fact that he is incarcerated. However, plantiff is in the process of retreiving materials from his residence at 4313 School Street in Rockford, IL and will provide texts and photos from Jessica Dominguez as well as other documents.

**INTERROGATORY NO. 4:** Identify each person who you believe has personal knowledge of any acts of discrimination Seneca took against you.

**ANSWER:** Ellen Murphy, Steve Wallis, Pete Severson, Andy Terry, Donnie Walker, Larry King, Chris Jensen, Jessica Dominguez, Brook Becker(RVCP Case Manager), Kendra Rahberg(RVCP Social Worker), co-worker and fellow RVCP inmate "Bufford".

**INTERROGATORY NO. 5:** If you are claiming a financial loss resulting from Seneca's alleged acts of discrimination, describe with particularity each item of financial loss you claim to have incurred as a result of Senec'a alleged acts of discrimination, and the correlation of each such item of loss to the actions or inactions of Seneca.

**ANSWER:** My financial loss is the wages that I would have earned and could have earned from 2015 until my age of retirement at age 65 years old, had I not been subjected to the abuse and discrimination brought upon by Seneca's group leaders/supervisors, Andy Terry, Steve Wallis and Larry King.

**INTERROGATORY NO 6:** If you are not currently employed, state the reason you are not currently employed.

**ANSWER:** I am not currently emlpoyed because I am incarcerated.

**INTERROGATORY NO 7:** Identify all employment you hace had since age 16. For each employment, state the name and location (by city and state) of your employer, the position you held, the duration of your employment, and the rate at which you were compensated.

**ANSWER:** I have worked for the following:
Pierce Packaging Company in Rockford, Illinois - The Broadway Sunoco Car Wash in Rockford, Illinois - The Gas & Glow Car Wash in Rockford, Illinois - I have also worked for my brother in-law doing plaster work.

**INTERROGATORY NO 8:** Identify any and all persons currently or previously employed at Seneca who you claim to have told that you suffer from a disorder or disability, and state the date you informed such person or persons and the location at which yuo informed such person or persons. For each such person, describe with particularity what you told him or her about your alleged disorder or disability, and why you provided such information to him or her.

**ANSWER:** First of all, I don't have an "alleged" disability or "disorder". It is very real and will be proven in jury trial. However, to be more direct in your answer, I informed Ellen Murphy on the date of application/interiew and again the following morning before watching the orientation videos. In fact, the hispanic office worker who was pregnant at the time asked me if I had done the quiz on my own or simply copied the answers that are shown at the end of the test which is used to self correct the orientations test; I do not remember her name but I remember being nervous about the woman asking me the question in the presence of Ellen Murphy and I explained

again that I have a hard time reading and understanding but that I could learn to drive a forklift if I was shown how to do it. I also explained my disorder to Pete Severson on the date of the safety videos in an office upstairs in warehouse #4.

**INTERROGATORY NO 9:** If you claim to suffer from a disorder or disability, describe with particularity the disability or disorder from which you claim to suffe, and identify and health care professionals(s) who have treated, diagnosed, or medicated you for such disorder or disability, including the dates and locations of such treatment.

**ANSWER:** I have been diagnosed with the following: A.D.D., Anti-Social Personality Disorder, Dysethmic, Major Depressive Disorder, Bi-Polar Disorder, Schizophrenia, and as stated in my first amended complaint, a childhood learning disorder based on surgeries to remove a tumor on the edge of my brain and complications before and after surgeries that complicated my ability to learn, concentrate and keep up the class studies that I was supposed to keep up with which caused A.D.H.D. and childhood personality behaviorial problems. As far as the dates, doctors, medications and locations, there are far to many for my memory to give you an accurate answer. However, I will provide you with this information very soon as I am in the process of retreiving what I can to be as cooperative in this discovery process as I can be.

**INTERROGATORY NO 10:** Identify, by name and location (city and state), each potential employer, at which you have applied for a position of employment, since November 15, 2015. For each potential employer, identify the position for which you applied and the rate of pay you would have received if you had obtained the position.

**ANSWER:** Universal Recycling Technology ("U.R.T.") on Beloit Ave in Janesville, WI. I applied for any available position that I could be hired for emphasizing that I had forklift experience at Seneca. Things went well during interview and orientation, however, the next day I was told in exact words, "U.R.T. had no available positions open", when I know that there were numerous open positions. It is my suspiscions that someone at Seneca when contacted by U.R.T. informed them of a pending discrimination complaint lodged against them by me, giving U.R.T. a decision to not hire

me based upon the complaint and in my opinion I regard it as further retaliation.

**INTERROGATORY NO 11:** If you fail to unequivocally admit any of the Requests to Admit, set forth above, describe with particularity the factual basis of your failure to admit.

**ANSWER:** What I have failed to admit is portions that you are asking me to admit to that I either object to that has no relevance or I feel that you are trying to get me to admit to trick questions or put questions together to make me sound guilty of something I'm not guilty of.

### ANSWERS TO REQUEST FOR PRODUCTION OF DOCUMENTS

**REQUEST NO 1:** Produce all documents, including but not limited to records of diagnosis or treatment, relating to any disability or disorder identified in response to Interrogatory No. 8.

**ANSWER:** I already answered this question above. See answer for Interrogatory No. 9.

**REQUEST NO 2:** Produce documents relating to any financial loss identiied in the response to Interrogatory No. 5.

**ANSWER:** I already answered this question as well. See answer for Interrogatory No. 5.

**REQUEST NO 3:** Produce copies or reproductions all items of physical evidence identified in response to Interrogatory No. 3.

**ANSWER:** I do not have any document or evidence in my physical posession. First of all, the photos of Jessica Dominguez exposing her breasts would not be allowed in the B.O.P. for me to have in my posession, evidence or otherwise, however, I am diligently in the process of retreiving all the documents that I can provide to avoid any further discovery dispute. I intend to furnish the text's and photo's of Jessica Dominguez as well as mental health records from the Social Security Administration, numerous mental health centers, Illinois Department of Corrections Psych divisions as well as records from the Federal Bureau of Prisons Mental Health and Psychology Dept.

As well as records contained in my pre-sentence investigation report ("P.S.R.") that deal with testing medication and diagnosis. Feel free to obtain any of the above through the freedom of information act and if I can be of any assistance as far as signing releases for information I will do so to assist in your discovery request. Further, I also intend to provide a statement from the Rock County Sheriffs Department, The Janesville City Police Department, as well as The United States Marshalls Office to dispute the fact that in your answer you claim that Seneca was notified that I would be picked up by law enforcement and would no longer be available to work at Seneca. I was not picked up by any law enforcement official on the day I quit my employment at Seneca, further, on that morning it was impossible for anyone at the halfway house to determine my fate and freedom in regards to an incident report that I received the night before in which I was allowed to leave the facility the following morning at 5am to report to work.

I declare under the penalty of perjury that the above answers are true to the best of my knowledge and memory and that I am in no way attempting to evade or cause any problems with defendants discovery request.

*Patrick Barrett*　　　11/20/2017

Patrick W. Barrett, Sr. (pro se)　　　Date
Reg. No. 05200-090
M.C.C.-Chicago
71 W. Van Buren Street
Chicago, IL 60605

### Certificate of Service

on this date, 11/20/2017, I caused to be delivered to the defendants attorney, by the U.S.P.S. at M.C.C. to hereto include answers for admissions, interrogatories and production of documents as well as to the clerk of this court.

For purposes of freedom of information act:
Patrick Wayne Barrett, Sr.
Date of Birth: 09/23/1963
SSN: 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
Reg. No. N64109
State of Illinois Dept. of Corrections - Reg. No. N64109
Federal Bureau of Prisons - Reg. No. 05200-090